## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**SAMANTHA DOLEN-CARTWRIGHT,**                    **CIVIL ACTION**
**on behalf of real party in interest G.C. and**
**real party in interest C.C.**                                  **NO. 21-527-JWD-RLB**

**VERSUS**

**DAVID ALEXANDER, ET AL.**

### <u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on February 24, 2022.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

SAMANTHA DOLEN-CARTWRIGHT,                    CIVIL ACTION
on behalf of real party in interest G.C. and
real party in interest C.C.                             NO. 21-527-JWD-RLB

VERSUS

DAVID ALEXANDER, ET AL.

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is Defendants' Motion to Dismiss, Motion to Strike, and Motion for

Attorney's Fees. (R. Doc. 20). The motion is opposed. (R. Doc. 26).[1] Defendants filed a Reply. (R.

Doc. 29).[2]

Also before the Court is Plaintiff's Motion to Change Status from Pro Se to Sui Juris and

Affidavit ("Motion to Change Status"). (R. Doc. 27). The motion is opposed. (R. Doc. 29).

I.      Background

This suit arises out of a challenge to the constitutionality of a mask mandate implemented by

the Ascension Parish Board of Education. (R. Doc. 1 ("Complaint"); R. Doc. 5 ("Amended

Complaint")). Plaintiff Samantha Dolen-Cartwright initiated this action on behalf of her two minor

children G.C. and C.C, who were both students at Dutchtown High School, an Ascension Parish

public school, at the time the lawsuit was filed. (R. Doc. 5 at 3, 21).[3] Plaintiff names as defendants:

(1) the Ascension Parish Board of Education ("School Board"); (2) David Alexander, in his

individual capacity and in his official capacity as Superintendent of the Ascension Parish School

District; and (3) Taft Kleinpeter, Troy J. Gautreau Sr., Robyn Delaney, David Scott Duplechein,

---

[1] Plaintiff filed this document as a "Motion to Dismiss." The Court will treat it as an Opposition.
[2] Defendants filed this document as an "Opposition" to Plaintiff's "Motion to Dismiss." The Court will treat it as a Reply.
[3] The Court refers to Samantha Dolen-Cartwright as "Plaintiff" in the sense that she is appearing in the lawsuit for the purpose of representing her minor children.

Julie Blouin, Marty Bourgeois, John D. Murphy, John DeFrances, Jared Bercegeay, Louis Lambert, Patricia Russo, Carli A Francois, Jill J. Gautreau, Mia Edwards, and Becky Amedee, all individual elected officials sued in their individual capacity and in their capacity as members of the School Board (collectively, "Defendants"). (R. Doc. 5 at 3-5).

On August 2, 2021, Governor John Bel Edwards issued a state-wide mask mandate in Louisiana. *See* Proclamation Number 137 JBE 2021 (effective August 4, 2021). On August 4, 2021, the School Board enacted a mask mandate for all students, teachers, and faculty:

> **FACE COVERINGS ON SCHOOL PROPERTY (INDOORS OR OUTDOORS):** Pursuant to Proclamation #137 JBE 2021 issued by Governor John Bel Edwards, all individuals shall wear a face covering when indoors on Ascension Public Schools property, as well as on school buses. Individuals are required to wear a mask over the nose and mouth upon entry to any building and remain properly masked while traveling about hallways, corridors, and common spaces inside of the building or in classrooms. Masks are not required when outdoors.

(R. Doc. 5 at 19-20).

On August 9, 2021, Plaintiff emailed a letter to the School Board stating that G.C. and C.C. were exempt from the mask mandate. (R. Doc. 5 at 21 (citing Ex. X of the Complaint, R. Doc. 1-1 at 186-204)). On August 10, 2021, G.C. and C.C. arrived at school without masks and were placed in a "Covid-19 isolation room" for pickup. (R. Doc. 5 at 21). Plaintiff then emailed various questions and requests for further information regarding the mask mandate to the School Board. (R. Doc. 5 at 21-22 (citing Ex. Z of the Complaint, R. Doc. 1-1 at 207-8)). The School Board sent Plaintiff a link to the proper mask mandate exemption form. (R. Doc. 5 at 22 (citing Ex. AA of the Complaint, R. Doc. 1-1 at 209-10)). On August 11, 2021, G.C. and C.C. again arrived at school without masks and were placed in a "Covid-19 isolation room" for pickup (R. Doc. 5 at 22). Plaintiff (or her children) hand submitted the School Board's "Face Covering Accommodation Request Forms" to Ms. Francois. (R. Doc. 5 at 22). These forms sought an exemption from the mask mandate based on a "medical condition" but do not provide any physician approval. (Ex. CC

2

to the Complaint, R. Doc. 1-1 at 212-13). The School Board denied the requests for medical exemptions because the forms did not provide a physician's signature. (R. Doc. 5 at 22 (citing Ex. DD to the Complaint, R. Doc. 1-1 at 215-16)). Plaintiff does not explain the nature of the alleged medical conditions for which she sought the mask mandate exemptions.

Among other things, Plaintiff alleges that the School Board's mask policy causes immediate and irreparable health risks to students, staff, and the community at large. (R. Doc. 5 at 26). In support, Plaintiff relies on the Affidavit of Stephen E. Petty. (R. Doc. 5 at 26 (citing Ex. O of the Complaint, R. Doc. 1-1 at 21-26)). Mr. Petty is purportedly an expert in the field of Industrial Hygiene, who has testified as to the "futility and danger caused by an individual wearing a mask in order to avoid transmitting or becoming infected with Covid-19[.]" (R. Doc. 5 at 26).

Plaintiff further alleges that her two children have been harmed by having to comply with the mask mandate, which is "not only unsupported by science, but which also results in the possible resulting measurable drop in oxygen saturation of the blood on one hand and the increase in carbon dioxide on the other, which contributes to an increased noradrenergic stress response, with heart rate increase and respiratory rate increase and, in some cases, a significant blood pressure increase." (R. Doc. 5 at 35-35).

Based on the above, Plaintiff filed her Complaint on September 14, 2021. (R. Doc. 1). The Complaint seeks a ruling declaring that the mask mandate is void and enjoining Defendants "from implementing or enforcing the mask policy and from taking any other action to implement the masking policy that is not in compliance with applicable law[.]" (R. Doc. 1 at 33).

On September 24, 2021, the district judge in this action denied a Motion for Temporary Restraining Order brought in a similar action seeking an injunction of the School Board mask mandate, finding that it did not satisfy the any of the four prongs required to obtain a TRO. *Miranda on behalf of M.M. v. Alexander*, No. 21-535, 2021 WL 4352328 (M.D. La. Sept. 24, 2021). First,

3

the district judge held that "Plaintiff's claim fails on the merits because she has not proven a Fourteenth Amendment violation." *Id*. at *4. Second, the district judge further held that Plaintiff had not established a substantial threat of irreparable injury because "(1) she has not shown that her children are suffering or are likely to suffer a real and actual harm; (2) her claim hinges on an affidavit which is not in proper form but, even if considered, (a) is based on data which is vague and non-specific and is not tied to potential harm to Plaintiff's children and (b) relates more to whether masks are effective, rather than the potential consequences of wearing one." *Id*. at *6. Third, the district judge held that "enjoining the School Board's mask policy would potentially cause substantial harm to the Parish's students, teachers, and faculty through community spread of COVID-19, which could potentially cause serious illness and death to them as well as those with whom they come into contact." *Id*. Fourth, the district judge held that "based on the grave risks associated with the ongoing COVID-19 pandemic and the increased risks to the school children of Ascension Parish and the public of granting the injunction, . . . the public interest would not be served by enjoining the mask mandate [, which] would pose an increased risk of quarantines, illness, and long-term learning disruptions." *Id*.

On October 15, 2021, Plaintiff filed an Amended Complaint. (R. Doc. 5).[4] Plaintiff now seeks recovery under 18 overlapping claims brought under both federal and state law for the alleged deprivation of her minor children's rights to life, liberty, and property when the School Board implemented the mask mandate:

- Count I – 42 U.S.C. § 1983 – Violation of Procedural Due Process (Fifth and Fourteenth Amendments)
- Count II – 42 U.S.C. § 1983 – Violation of Substantive Due Process (Fourteenth Amendment)
- Count III – Violation of Procedural Due Process (La. Const. Art. I, § 22)
- Count IV – Violation of Substantive Due Process (La. Const. Art. I, § 22)

---

[4] Plaintiff filed the Amended Complaint prior to service of the original Complaint, as allowed as a matter of course under Rule 15(a)(1).

- Count V – Americans with Disability Act of 2008 – Violation of Subchapter III Subpart B, 36.201(a)
- Count VI – Americans with Disability Act of 2008 – Violation of Subchapter III Subpart B, 36.202(a)
- Count VII – Violation of Louisiana Constitution Art. 101
- Count VIII – Violation of Louisiana R.S. 17:170(E)
- Count IX – Violation of "Federal law stating an individual has the 'right to refuse' any experimental medical intervention under an Emergency Use Authorization
- Count X – Violation of Article VIII – Education of Louisiana Constitution
- Count XI – Violation of La. R.S. 40:17
- Count XII – Violation of Louisiana Constitution Art. 1 § 3
- Count XIII – Violation of Medical Directive Act – La. R.S. 40:1299.58.1
- Count XIV – Violation of Uniform Consent Law – La. R.S. 40:1157.1
- Count XV – Violation of Louisiana Constitution Art. 1 § 12
- Count XVI – Violation of 42 U.S.C. § 1985
- Count XVII – Violation of Americans with Disability Act of 2008
- Count XVIII – Violation of OSCH Respiratory Protection Standard 1910.134

(R. Doc. 5 at 43-53). Among other things, Plaintiff alleges that (1) her children have a constitutionally protected interest in not being subjected to the School Board's mask mandate; (2) the School Board's policy unlawfully deprives Plaintiff's children of their constitutionally protected rights without due process of law; and (3) the School Board impeded on the fundamental right of her children to public education. As in the original Complaint, the relief prayed for by the Plaintiff includes injunctive and declaratory relief with respect to the implementation and enforcement of the mask policy, as well as an award of attorney's fees. (R. Doc. 5 at 53-54). Plaintiff also appears to seek monetary damages.

On October 26, 2021, Governor Edwards lifted the requirement for a state-wide mask mandate and allowed local public school districts to affirmatively opt out of the mask mandate if certain isolation and quarantine policies are adopted. *See* Proclamation Number 203 JBE 2021 (effective October 27, 2021). (*See* R. Doc. 20-3 at 1-3). In light of this proclamation, effective October 27, 2021, face coverings for staff, students, and visitors became optional in Ascension Parish Public Schools. (R. Doc. 11) (*See* R. Doc. 20-3 at 4-5).

On December 21, 2021, Defendants filed their Motion to Dismiss, Motion to Strike, and Motion for Attorney's Fees. (R. Doc. 19). Defendants seek (1) dismissal under Rule 17(b)(3), and applicable Louisiana procedural law, for lack of procedural capacity to sue on behalf of her minor children while proceeding without counsel, (2) dismissal for lack of Article III standing and mootness; (3) dismissal based on Eleventh Amendment Immunity; (4) dismissal for failure to state a claim; (5) an order striking the Affidavit of Stephen E. Petty from the record; (6) dismissal for improper service; and (7) an award of costs and attorney's fees under 42 U.S.C. § 1988(b).

On January 20, 2022, Plaintiff filed her Motion to Change Status, which appears to seek legal significance in the change of her "pro se" filing status to a "sui juris" filing status. (R. Doc. 21).

## II.    Law and Analysis

### A.    Standards for *Pro Se* Litigants

As an initial matter, the Court acknowledges that this action, and Plaintiff's pleadings, motions, and briefs, were filed *pro se* (i.e., without the benefit of counsel). Federal courts generally hold *pro se* petitioners to less stringent standards than those required of petitioners represented by counsel. *See Ominski v. Northrop Grumman Shipbuilding, Inc.*, 466 F. App'x 341, 345 (5th Cir. 2012) (affording the plaintiff "the leeway to which she is entitled as a *pro se* petitioner"); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding the allegations of a *pro se* complaint to "less stringent standards than formal pleadings drafted by lawyers"). Nevertheless, "a *pro se* litigant is not exempt . . . from compliance with the relevant rules of procedural and substantive law." *NCO Financial Systems, Inc. v. Harper–Horsley*, No. 07-4247,  2008 WL 2277843, at *3 (E.D. La. May 29, 2008) (citing *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981)).

### B.    Plaintiff's Motion to Change Status

Through this motion, Plaintiff seeks to be recognized as "Samantha Dolen-Cartwright, Pro Se Sui Juris Propria Persona, free, Natural Person, All Rights Reserved, Sovereign Child of God." (R. Doc. 27 at 1).[5] Among other things, Plaintiff suggests that she is bound only by her "God-given, secured and guaranteed Rights, pursuant to the Declaration of Independence and the Constitution for the United States of America as ratified in 1791 with the Articles of the Amendments." (R. Doc. 27 at 3). Plaintiff asserts that she is "not a citizen, resident, subject, taxpayer, et al., of the municipal corporations and private corporations doing business in the Parish of Ascension, Geismar, State of Louisiana . . . ." (R. Doc. 27 at 4). Plaintiff further asserts that the "municipal corporations or private corporations doing business as Parish of Ascension, Geismar, State of Louisiana or of any other municipal corporation; possess no interest in [her] Private Property, possess no authority to make claims against [her] Private Property, and possess no authority or rights, whatsoever, over [herself], or [her] Private Property." (R. Doc. 27 at 5).

The motion is meritless. There would be no legal significance in holding that Plaintiff can proceed "sui juris" as opposed to "pro se." The terms are not mutually exclusive:

> The term *sui juris* is a Latin term and translates as "of one's own right; independent." In the legal field, *sui juris* is used to signify someone who has reached the age of

---

[5] Much of the language used in Plaintiff's motion appears reflective of the Sovereign Citizens Movement.. "The sovereign citizens are a loosely affiliated group who believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior." *Jackson v. Massachusetts*, No. 18-11609, 2018 WL 5017919, at *1 (D. Mass. Oct. 15, 2018) (citing *United States v. Ulloa*, No. 11-5368, 511 Fed. App'x 105, 107, 2013 WL 535776, at n. 1. (2d Cir. 2013); *Gauthier v. Kirkpatrick*, 2013 WL 6407716, at *17 n.18 (D. Vt. Dec. 9, 2013) (noting courts have described sovereign citizen ideology as "completely without merit," "patently frivolous," and "having no conceivable validity in American law") (citations omitted)); *see also United States v. Williams*, No. 419-cr-089, 2020 WL 762540, at *3 (S.D. Ga. Feb. 14, 2020) ("Defendant's filings, to the extent they are comprehensible, bear all of the hallmarks of the 'sovereign citizen' theory that has been consistently rejected by the federal courts as an utterly frivolous attempt to avoid the statutes, rules, and regulations that apply to *all* litigants, regardless of how they portray themselves.") (citing *United States v. Sterling*, 738 F.3d 228, 233 n. 1 (11th Cir. 2013) (noting that courts routinely reject sovereign citizen legal theories as "frivolous") (citing *United States v. Benabe*, 654 F.3d 753, 761-67 (7th Cir. 2011) (recommending that sovereign citizen theories "be rejected summarily, however they are presented")); *Linge v. State of Georgia Inc.*, 569 F. App'x 895, 896 (11th Cir. 2014) (rejecting such theories as "wholly unsubstantial and frivolous"); *Roach v. Arrisi*, No. 15-2547, 2016 WL 8943290 at *2 (M.D. Fla. 2016) (noting that sovereign citizen theories have not only been consistently rejected by the courts, but they have been described as "utterly frivolous," "patently ludicrous," and "a waste of . . . the court's time, which is being paid for by hard-earned tax dollars") (citation omitted); *United States v. Alexio*, No. 13-1018, 2015 WL 4069160 at *3 (D. Hawaii 2015)).

majority or someone who possesses full civil rights.[6] Pro se is also a Latin term and it translates as "[f]or oneself; on one's own behalf." In the legal field, pro se is used to indicate a litigant who is proceeding without the assistance of a lawyer. By their plain meanings, the two terms convey different ideas and have no effect on each other.

*Winsey v. Nationstar Mortg. LLC*, No. 17-979, 2017 WL 2931381, at *1 (M.D. Fla. July 10, 2017) (quoting and citing Black's Law Dictionary (10th ed. 2014)). "Federal courts . . .  have regarded parties as appearing *pro se* even where the parties have asserted that they are appearing *sui juris* rather than *pro se.*" *Hall v. Washington Mut. Bank*, No. 10-01606, 2010 WL 11549664, at *3 (C.D. Cal. July 7, 2010) (citing cases). Courts have repeatedly found no significance in a parties' designation as proceeding "sui juris" as opposed to "pro se." *See, e.g.*, *Jackson v. Massachusetts*, No. 18-11609, 2018 WL 5017919, at *1 (D. Mass. Oct. 15, 2018) ("To the degree [the Plaintiff] maintains that he is not a *pro se* litigant but a "sui juris" party, his position is facially deficient. His legal position is erroneously based on a misguided reading of statutes and other authority that are common to claims asserted by sovereign citizen groups.").

Having reviewed Plaintiff's Motion to Change Status, as well as the arguments set forth in Plaintiff's Response to Defendants' Motions (R. Doc. 26), it appears that Plaintiff is primarily seeking a holding that she can represent the interests of her minor children without counsel. The Court will address that issue below. The instant motion is subject to denial because there is no legal basis for granting any "change of status" sought by Plaintiff to proceed "sui juris" as opposed to "pro se."

---

[6] Given Plaintiff's religion-based arguments, Defendants suggest that Plaintiff may be seeking designation as "sui juris" consistent with the "Code of Canons of the Eastern Churches, a set of laws that are independent of state and federal law, which are followed by the Catholic Church, the Roman Catholic Church, and those in communion with it." (R. Doc. 23 at 7). The Court need not speculate on Plaintiff's religious beliefs. It is sufficient to hold that Plaintiff is proceeding "pro se" for the purposes of representing her minor children in this lawsuit regardless of the assertions in Plaintiff's motion with respect to proceeding "sui juris" in the alternative.

**C.      Defendants' Motion to Dismiss**

**1.      Lack of Procedural Capacity**

In seeking dismissal of this action, Defendants first argue that Plaintiff lacks procedural capacity under Rule 17(b)(3) to represent her minor children, G.C. and C.C. Defendants further argue that Plaintiff cannot represent those minor children *pro se* in federal court. (R. Doc. 19-1 at 2-3).

Rule 17 states that the "capacity to sue or be sued shall be determined by the law of the state in which the district is held." Fed. R. Civ. P. 17(b)(3). Under Louisiana law, only "[a] competent major and a competent emancipated minor have the procedural capacity to sue." La. C.C. Proc. Art. 681. As unemancipated minors, G.C. and C.C. lack procedural capacity to maintain this suit under Louisiana law. La. C.C.P. art. 683(A). For an unemancipated minor to bring a lawsuit, "[a]ll persons having parental authority over [the] unemancipated minor must join as proper plaintiffs to sue to enforce a right of the minor, unless a joint custody implementation order otherwise applies. Nevertheless, with permission of the court, any person having parental authority may represent the minor whenever the other person having parental authority fails or refuses to do so." La C.C.P art. 683(B). "When a plaintiff sues as an agent to enforce a right of his principal, or as a legal representative, his authority or qualification is presumed, unless challenged by the defendant by the timely filing of the dilatory exception. When so challenged, the plaintiff shall prove his authority or qualification on the trial of the exception." La. C.C.P. art. 700. Accordingly, Plaintiff (as the sole parental authority suing on behalf of the minor children G.C. and C.C.) bears the burden of proof to establish sole parental authority to maintain this lawsuit.

In addition, the general rule in federal court is that while parties generally have the right to proceed *pro se* under 28 U.S.C § 1654, a party cannot proceed *pro se* on behalf of another individual, including a spouse or minor children. *Sprague v. Dep't of Fam. & Protective Servs.*, 547

F. App'x 507, 508-09 (5th Cir. 2013) (citing *Johnson v. Lufkin Daily News,* 48 Fed. App'x 917 (5th Cir. 2002) (citing § 1654); *Morgan v. Texas*, 251 Fed. App'x 894, 896 n. 2 (5th Cir. 2007) (noting that because the plaintiff was proceeding *pro se,* she did not have the authority to assert claims on behalf of the minor child); *Aduddle v. Body*, 277 Fed. App'x 459 (5th Cir. 2008) (holding that even assuming the grandfather was the legal guardian of the grandchild, because he was not an attorney, he did not have the authority to represent her on a *pro se* basis)); *see also Chatman v. Mississippi High Sch. Athletics Ass'n*, 552 F. App'x 335, 337 (5th Cir. 2014) ("[W]ith limited exceptions not applicable here, a pro se, non-lawyer parent or guardian may not represent the interests of her minor child [in a Section 1983 action]."); *JD1 by & through Raskin v. Dallas Indep. Sch. Dist.*, No. 21-2429, 2021 WL 5396001, at *3 (N.D. Tex. Nov. 17, 2021) ("[T]he law does not allow parents like Ms. Raskin to lodge claims and sue pro se on behalf of their children. This is because individuals who do not have a law license may not represent other parties, even minor children, on a next-friend basis.") (citing *Sprague*, 547 F. App'x at 508). An exception to this general rule applies where parents bring an appeal for supplemental security income benefits under Title XVI of the Social Security Act where the parent has a sufficient interest in the case and meets basic standards of competence. *See Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000). That exception is inapplicable to this case.

Plaintiff does not directly address Defendants' arguments regarding procedural capacity. Instead, Plaintiff argues that her children "cannot be denied seeking judicial remedy under the Constitution" given the broad scope of rights provided by the Constitution, as well as natural law and various Louisiana Civil Code articles. (R. Doc. 26 at 2-3).[7]

---

[7] In particular, Plaintiff cites Louisiana Civil Code Article 226 ("Parents have a moral obligation to provide moral, social, and material direction for their child.") and Louisiana Civil Code Article 222 ("Parental authority includes representation of the child and right to designate a tutor for the child."). These civil code articles have no bearing on procedural capacity to sue in court.

Having considered the arguments of the parties, the Court concludes that Plaintiff has not met her burden of proving she has procedural capacity to act as the legal representative on behalf of her minor children under Rule 17(b)(3) and the applicable Louisiana law. Plaintiff has not demonstrated that she has sole parental authority over the minor children to bring this lawsuit or otherwise obtained permission of the Court to proceed as sole parental authority. Even if she had done so, Plaintiff cannot proceed on behalf of her minor children without the benefit of counsel. *See Sprague*, 547 F. App'x at 508-09. Regardless of whether Plaintiff assigns meaning to her request to proceed "sui juris," it nevertheless remains the general rule that parents may not represent their children *pro se* in actions of this nature.

Based on the foregoing, this action is subject to dismissal because Plaintiff lacks procedural capacity to represent her minor children without the benefit of counsel. *See A.R. by & through Roberts v. Kansas Sch. Bd. Ass'n*, No. 21-2492, 2022 WL 103292, at *4 (D. Kan. Jan. 11, 2022) ("[T]he court finds that Plaintiff Roberts has failed to establish standing for any federal claims on her own behalf and, because she is proceeding pro se, she cannot proceed on any federal claims on behalf of her minor children."). Even if Plaintiff could demonstrate that she has procedural capacity to represent her minor children, this action is nevertheless subject to dismissal for the reasons stated below.

### 2.    Subject Matter Jurisdiction

Defendants seek dismissal of this action under Rule 12(b)(1) for lack of subject matter jurisdiction on the basis that federal question jurisdiction under 28 U.S.C. § 1331 is unavailable, any declaratory and injunctive relief sought is moot, and Plaintiff otherwise lacks standing. (R. Doc. 19-1 at 7-17). Defendants further assert that the Court lacks subject matter jurisdiction in light of their immunity under the Eleventh Amendment of the U.S. Constitution. (R. Doc. 19-1 at 17-20).

"Federal courts have limited jurisdiction, and a claim is properly dismissed for lack of subject matter jurisdiction when the court lacks statutory or constitutional power to adjudicate the claim." *Crawford v. U.S. Dep't of Homeland Sec.*, 245 Fed. App'x 369, 374 (5th Cir. 2007) (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). A motion to dismiss filed pursuant to Rule 12(b)(1) "allow[s] a party to challenge the subject matter jurisdiction of the district court to hear a case." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The district court may base its determination as to its subject matter jurisdiction on: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* "The burden of establishing subject matter jurisdiction in federal courts rests on the party seeking to invoke it." *St. Paul Reinsurance Co. v. Greenberg,* 134 F.3d 1250, 1253 (5th Cir. 1998). The Court must dismiss an action if at any time it determines it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

### i.    Federal Question Jurisdiction

In the context of opposing Plaintiff's Motion to Change Status, Defendants argue that it is unclear what basis Plaintiff is asserting with respect to this Court's subject matter jurisdiction, given that the parties are not diverse and Plaintiff appears to deny the authority and application of federal law enacted since 1791. (*See* R. Doc. 23 at 2-6).

Plaintiff's Complaint and Amended Complaint both assert that this Court has subject matter jurisdiction based on 28 U.S.C. § 1131, 28 U.S.C. § 1343(a)(3)-(4), 28 U.S.C. § 1367, 28 U.S.C. § 2201, and 42 U.S.C. § 1983. (R. Doc. 1 at 5; R. Doc. 5 at 5). Federal question jurisdiction exists under 28 U.S.C. § 1331 "if there appears on the face of the complaint some substantial, disputed question of federal law." *In re Hot–Hed, Inc.*, 477 F.3d 320, 323 (5th Cir. 2007) (quoting *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 366 (5th Cir. 1995)). While Plaintiff raises

contradictory positions with the respect to the applicability of federal law, she has nevertheless raised claims under federal law, including 42 U.S.C. § 1983 and the Americans with Disabilities Act ("ADA"). This is sufficient for an exercise of subject matter jurisdiction under 28 U.S.C. § 1331.[8]

### ii.    Eleventh Amendment Immunity

Defendants move the Court to dismiss the action for lack of subject matter jurisdiction on the basis that Plaintiff brings claims against state officials acting in their official capacities that are barred in light of the immunity provided by the Eleventh Amendment to the U.S. Constitution. (R. Doc. 20-4 at 12-16).

The Eleventh Amendment bars a state from being sued in federal court by its own citizens, citizens of other states, or foreign nations. U.S. Const. Amend. XI; *Seminole Tribe v. Florida*, 517 U.S. 44, 54 (1996); *Cox v. City of Dallas*, 256 F.3d 281, 307 (5th Cir. 2001) (citing *Bd. of Trs. Of Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001)). "When a state agency is named the defendant, the Eleventh Amendment bars suits for both money damages and injunctive relief unless the state has waived its immunity." *Cozzo v. Tangipahoa Parish Council--President Government*, 279 F.3d 273, 281 (5th Cir. 2002). "This rule extends to 'arms of the state,' and to a state's 'officials acting in their official capacities.'" *Parker v. Louisiana Dep't of Pub. Safety & Corr.*, No. 18-1030, 2020 WL 4353564, at *8 (M.D. La. July 29, 2020) (citing *Howlett v. Rose*, 496 U.S. 356, 365, (1990); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)) ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the

---

[8] Section 1343 also provides this Court with original jurisdiction over Plaintiff's claims to the extent they seek "[t]o redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States." 28 U.S.C. § 1343(a)(3). The Declaratory Judgment Act, 28 U.S.C. § 2201, however, does not provide any independent ground for jurisdiction. *Jones v. Alexander*, 609 F.2d 778, 781 (5th Cir. 1980) ("The Declaratory Judgment Act is not an independent ground for jurisdiction; it permits the award of declaratory relief only when other bases for jurisdiction are present."). The Court will discuss any exercise of supplemental jurisdiction under 28 U.S.C. § 1367 over state law claims below.

official, but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.").

The State of Louisiana has not waived its immunity from suit in federal court. *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999) (citing *Quern v. Jordan*, 440 U.S. 332, 345 (1979)); La. R.S. § 13:5106(a). Under the *Ex Parte Young* doctrine, however, "a litigant may sue a state official in his official capacity if the suit seeks prospective relief to redress an ongoing violation of federal law." *Williams on Behalf of J.E. v. Reeves*, 954 F.3d 729, 735-36 (5th Cir. 2020) (citing *Ex parte Young*, 209 U.S. 123 (1908)). This exception "rests on a legal fiction, the premise that a state official is not the State for sovereign-immunity purposes when a federal court commands [him or her] to do nothing more than refrain from violating federal law." *Id.* at 168. (citations omitted). For a suit to proceed under this doctrine, it must be a suit seeking declaratory or injunctive relief and: "(1) be brought against state officers who are acting in their official capacities; (2) seek prospective relief to redress ongoing conduct; and (3) allege a violation of federal, not state, law." *Id*. (citing *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015). This is true, even where an injunction may have "an ancillary effect on the state treasury." *Quern v. Jordan*, 440 U.S. 332, 337 (1979).

The burden of proof in demonstrating that the School Board, and its members, are an "arm of the State of Louisiana" falls on the Defendants. *Skelton v. Camp*, 234 F.3d 292, 297 (5th Cir. 2000). Defendants assert, with no legal citation, that there is no dispute that the School Board is an "arm of the State of Louisiana," and, therefore, entitled to assert Eleventh Amendment Immunity. (R. Doc. 19-1 at 18; R. Doc. 24 at 4). The Fifth Circuit has held, however, that a Parish of the State of Louisiana is not an "arm" of the State of Louisiana. *United Disaster Response, LLC v. Omni Pinnacle, LLC*, 511 F.3d 476, 478-480 (5th Cir. 2007). More specifically, the Fifth Circuit has expressly held that a "parish school board" is not an "arm" of the State within the meaning of the

14

Eleventh Amendment. *Minton v. St. Bernard Par. Sch. Bd.*, 803 F.2d 129, 132 (5th Cir. 1986)

("Louisiana school boards . . .  are not entitled to eleventh amendment immunity."); *see Sch. Bd. of*

*Par. of St. Charles v. Roxco, Ltd.*, No. 01-0359, 2001 WL 283094, at \*1 (E.D. La. Mar. 21, 2001)

("[T]he School Board of the Parish of St. Charles . . . is not entitled to Eleventh Amendment

immunity in the present action because it is not an arm of the State of Louisiana."). Accordingly,

Defendants have not demonstrated that they are entitled to Eleventh Amendment immunity.

      Defendants also argue that they have immunity from civil liability in light of certain

restrictions on enacted by the Louisiana legislature with respect to statements made by school

employees while in the course and scope their employment or regarding any injuries related to the

COVID-19 pandemic. (R. Doc. 20-4 at 15-16) (citing La. R.S. 17:439(A) ("Except as otherwise

provided in this Section, no person shall have a cause of action against any school employee based

on any statement made or action taken by the school employee provided that the action or statement

was within the course and scope of the school employee's duties as defined by the school board in

which the school employee is employed and was within the specific guidelines for school employee

behavior as established by that school board."); La R.S. 17:439.1(A) ("Notwithstanding any other

provision of law to the contrary, public and nonpublic schools, public and nonpublic school

systems, public and nonpublic school governing authorities, and charter school governing

authorities, and the officers, employees, and agents thereof shall not be held liable for any civil

damages for injury or death resulting from or related to actual or alleged exposure to COVID-19 or

acts undertaken in the effort to respond or adapt to the COVID-19 public health emergency.")).

These Louisiana statutes do not provide immunity from civil lawsuits in federal court as a matter of

the Court's subject matter jurisdiction. At most, these statutes provide immunity from certain civil

actions brought under state law, but not any claims raised under federal law. *See* U.S. Const. art. VI,

cl. 2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . ., shall be the supreme Law of the Land. . . .").[9]

Given the foregoing, Defendants have not demonstrated that they are entitled to Eleventh Amendment Immunity. The Court will, therefore, determine whether an exercise of subject matter jurisdiction is proper in light of Defendants' arguments regarding Article III standing and mootness.

### iii.    Standing and Mootness

Article III of the United States Constitution extends the judicial power of the United States to actual "cases" and "controversies." U.S. Const. art. III, § 2; *see Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). "The justiciability doctrines of standing, mootness, political question, and ripeness 'all originate in Article III's "case" or "controversy" language.' *Choice Inc. of Texas v. Greenstein*, 691 F.3d at 715 (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)).

To have Article III standing, the Plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant (causation), and (3) that is likely to be redressed by a favorable judicial decision. *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Friends of the Earth, Inc. v. Laidlaw Environ. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)). The plaintiff who files a complaint in federal court, as the party invoking federal jurisdiction, bears the burden of establishing these elements. *Id.* (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)). In order to satisfy this burden at the pleading stage the plaintiff must clearly allege facts to satisfy each element of Article III standing. *Id.* (quoting *Warth*, 422 U.S. at 518). Moreover, the plaintiff must demonstrate standing separately for each form of relief that he seeks. *Friends of the Earth*, 528 U.S. at 185 (citing *Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983)). When

---

[9] As discussed below, the Court finds that Plaintiff has not stated a federal claim for which relief can be granted. The Court takes no position on whether La R.S. 17:439 or La R.S. 17:439 bar civil liability with respect to Plaintiff's claims raised under state law.

a party cannot establish the standing requirements imposed by Article III, courts lack subject matter

jurisdiction over the case. *Bell v. American Traffic Solutions, Inc*., 371 Fed. App'x 488, 489 (5th

Cir. 2010); *Cadle Co. v. Neubauer*, 562 F.3d 369, 371 (5th Cir. 2009).

Plaintiff's arguments in support of a finding of standing focus on Plaintiff's allegations with

respect to the quarantining/confining of her minor children and their subsequent "forced"

withdrawal from public school. (R. Doc. 26 at 3-5). It appears proper to find an actual case or

controversy based on the allegations in the pleadings. The alleged injury in fact is the deprivation of

the minor children's rights under federal law by requiring them to wear masks while attending

public school.[10]  This alleged injury in fact can be fairly traceable to the School Board in issuing a

mask mandate requiring public school children to wear masks in the school setting. A favorable

judicial decision declaring the mask mandate void and enjoining the enforcement of the mask

mandate would redress the alleged violation. That Courts have found that mask mandates do not

violate certain federal rights goes to the merits of Plaintiff's claims, not whether Plaintiff has

standing to raise such claims on behalf of her minor children.[11]

The Court will turn to whether the injunctive and declaratory relief sought in this action is

moot given that the mask mandate was lifted effective October 27, 2021. "It is well-settled, that

mootness is a threshold jurisdictional inquiry." *Louisiana Environmental Action Network [LEAN] v.*

---

[10] However, in the context of addressing whether plaintiffs had standing to challenge a Texas state law prohibiting local governmental entities from imposing mask mandates, the Fifth Circuit concluded that the plaintiffs likely failed to show that the enforcement of the statute resulted in an injury in fact. *E.T. v. Paxton*, 19 F.4th 760, 766 (5th Cir. 2021) ("The risks of contracting COVID-19 for these plaintiffs are certainly real, but the alleged injury to plaintiffs *from the enforcement of GA-38* is, at this point, much more abstract. This is so because the binary choice envisioned by the district court—either stay home or catch COVID-19—is a false one: it wholly elides the various accommodations available to the plaintiffs (e.g., distancing, voluntary masking, class spacing, plexiglass, and vaccinations) to ensure a safer learning environment, regardless of GA-38's prohibition of local mask mandates. Beyond whether plaintiffs allege a 'concrete' injury, they also likely fail to show any actual or imminent injury as a result of the enforcement of GA-38.").

[11] To the extent Plaintiff seeks relief on her own behalf, however, it would be proper to find that Plaintiff lacks standing. Plaintiff "does not allege that the policy has mandated that she wear a mask for any particular time" and, accordingly, has not suffered any "concrete and particularized injury" to form the basis of an Article III injury in fact. *See Roberts*, 2022 WL 103292, at *4.

*U.S. E.P.A.*, 382 F.3d 575, 580-81 (5th Cir. 2004) (citing *Deakins v. Monaghan,* 484 U.S. 193, 199 (1988) ("Article III of the Constitution limits federal courts to the adjudication of actual, ongoing controversies between litigants."). "In general, a claim becomes moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *LEAN*, 382 at 581 (citing *Murphy v. Hunt,* 455 U.S. 478, 481 (1982) (per curiam); *Piggly Wiggly Clarksville v. Mrs. Baird's Bakeries,* 177 F.3d 380, 383 (5th Cir. 1999). "If a dispute has been resolved, or if it has evanesced because of changed circumstances, it is considered moot." *LEAN*, 382 at 581 (citing *American Medical Assoc. v. Bowen,* 857 F.2d 267 (5th Cir. 1988)). In certain circumstances, there is "an exception to the general principle of mootness in instances where some issues of a case have become moot "but the case as a whole remains alive because other issues have not become moot." *LEAN*, 382 at 581 (quoting *ITT Rayonier, Inc. v. United States,* 651 F.2d 343, 345 (5th Cir. 1981)).

Some courts have held that the lifting of a mask mandate renders an action challenging the mask mandate moot because the action is no longer premised upon an actual case or controversy recognized under Article III of the U.S. Constitution. *See*, *e.g.*, *Zinman v. Nova Se. Univ., Inc.*, No. 21-60723, 2021 WL 4025722, at *9-11 (S.D. Fla. Aug. 30, 2021) (constitutional challenge of Palm Beach's mask mandate became moot, to the extent the plaintiff sought declaratory and injunctive relief, upon the issuance of Governor's Executive Order precluding municipalities from enacting such ordinances), *report and recommendation adopted sub nom. Zinman v. Nova Se. Univ.*, 2021 WL 4226028 (S.D. Fla. Sept. 15, 2021); *Kelly v. Imagineif Libr. Entity*, No. 21-6, 2021 WL 2444663, at *2-3 (D. Mont. June 15, 2021) (plaintiff's claims challenging statewide mask mandate and seeking declaratory and injunctive relief were moot where Governor lifted statewide mask mandate one month after the filing of the lawsuit).

The Court recognizes that a defendant's "voluntary cessation of challenged conduct does not ordinarily render a case moot." *Knox v. Serv. Emp. Int'l Union, Local 1000*, 567 U.S. 298, 307

18

(2012); *see Sossamon v. Lone Star State of Texas,* 560 F.3d 316, 324 (5th Cir. 2009), *aff'd sub nom.*
*Sossamon v. Texas*, 563 U.S. 277 (2011). A case can nevertheless be rendered moot if "(1) it can be
said with assurance that there is no reasonable expectation . . . that the alleged violation will recur,
and (2) any interim relief or events have completely and irrevocably eradicated the effects of the
alleged violation." *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (quotation omitted).
Here, there is arguably no reasonable expectation that the School Board will reinstate a public
school mask mandate given that Governor Edwards has lifted the requirement for a state-wide mask
mandate and has allowed local school districts to affirmatively opt out of the public school mask
mandate if certain isolation and quarantine policies are adopted. *See* Proclamation Number 203 JBE
2021 (effective October 27, 2021). (*See* R. Doc. 19-4 at 1-3). The lifting of the mask mandate in
Ascension Parish public schools in light of this proclamation arguably constitutes an interim event
that has "completely and irrevocably eradicated the effects" of Plaintiff's alleged constitutional
violations. (*See* R. Doc. 19-4 at 4-5).

That said, the Court further recognizes that the U.S. Supreme Court has addressed mootness
in the context of COVID-19 restrictions, finding that the lifting of pandemic orders does not
necessarily render the relief sought as moot. *See Roman Catholic Diocese of Brooklyn v. Cuomo*, ---
U.S. ---, 141 S. Ct. 63, 68–69 (2020) (plaintiffs' challenge to a state COVID-19 pandemic order
limiting attendance at religious services was not moot where the state had relaxed the attendance
limitations in response to declining COVID-19 cases because the plaintiffs "remain under a constant
threat" that the state will reimpose the attendance limits without notice and "bar individuals in the
affected area from attending services before judicial relief can be obtained"); *Tandon v. Newsom*, ---
U.S. ---, 141 S. Ct. 1294, 1297 (2020) (plaintiffs' challenge to a state COVID-19 pandemic order
limiting gatherings, including gatherings for at-home religious activities, was not moot even though
the defendants modified the guidance in the course of the litigation); *but see Spell v. Edwards*, No.

19

20-00282, 2022 WL 131249, at *1 (M.D. La. Jan. 12, 2022) ("The Supreme Court's most recent jurisprudence cannot save Plaintiffs' claims for injunctive relief because the challenged restrictions have expired on their own terms and there is no indication whatsoever that crowd-size limits on indoor assembly will be reinstated.").

Given the ever-evolving government responses to the current pandemic as well as the decisions by the Supreme Court, this action presents an ongoing "case or controversy" under Article III. The Court will address the merits of Plaintiff's federal claims below. [12]

### 3. Failure to State a Claim

#### i. Legal Standards for Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a Rule 12(b)(6) motion, a pleading's language, on its face, must demonstrate that there exists plausibility for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In determining whether it is plausible that a pleader is entitled to relief, a court does not assume the truth of conclusory statements, but rather looks for facts which support the elements of the pleader's claim. *Twombly*, 550 U.S. at 557. Factual assertions are presumed to be true, but "labels and

---

[12] Given that Plaintiff asserts that G.C. and C.C. have withdrawn from public school, it appears that Plaintiff's claims are moot to the extent Plaintiff seeks injunctive and declaratory relief. *See Van Alstyne Indep. Sch. Dist. v. Andre S.*, No. 4:09-CV-89, 2010 WL 715560, at *6 (E.D. Tex. Feb. 23, 2010) (The IDEA claims of a disabled student's parents against a school district were moot after the student withdrew from the school). At any rate, the Court concludes that Plaintiff's claims are subject to denial as meritless.

conclusions" or "a formulaic recitation of the elements of a cause of action" alone are not enough to

withstand a 12(b)(6) motion. *Iqbal*, 556 U.S. at 678.

In most circumstances, a court should allow a plaintiff at least one chance to amend the

complaint under Rule 15(a) before dismissing the action with prejudice. *See Great Plains Trust Co.

v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) (plaintiffs are generally

given one chance to amend before dismissal unless "it is clear that the defects are incurable").

However, a court should deny leave to submit futile amendments that are "insufficient to state a

claim." *Jamieson v Shaw*, 772 F.2d 1205, 1209 (5th Cir. 1985).

Having considered the pleadings as a whole and the arguments of the parties, the Court

concludes that Plaintiff has failed to allege a claim under federal law. The Court further concludes

that any further amendment would be futile with respect to the federal claims already alleged.

### ii.    42 U.S.C. § 1983

Counts I and II respectively seek relief through 42 U.S.C. § 1983 for violations of

procedural and substantive due process as guaranteed under the Fifth and Fourteenth Amendments

of the U.S. Constitution. (R. Doc. 5 at 43-45).

Section 1983 provides that "[e]very person who, under color of any statute, ordinance,

custom, or usage . . ., subjects, or causes to be subjected, any citizen of the United States . . . to the

deprivation of any rights, privileges, or immunities secured by the Constitution and [federal] laws,

shall be liable to the party injured." 42 U.S.C. § 1983. To state a claim under section 1983, "a

plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States

and (2) demonstrate that the alleged deprivation was committed by a person acting under color of

state law." *Lauderdale v. Texas Dep't of Criminal Justice*, 512 F.3d 157, 165 (5th Cir. 2007)

(internal quotation marks and citation omitted).

The Due Process Clause of the Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The U.S. Supreme Court has interpreted the Due Process Clause as containing guarantees of both "procedural" and "substantive" due process. *Reno v. Flores*, 507 U.S. 292, 301-02 (1993) (citing cases).

In denying the Motion for Temporary Restraining Order in the related challenge to the mask mandate, the district judge held that Plaintiff failed to meet her burden of establishing a procedural or substantive due process claim under the Fourteenth Amendment. *Miranda*, 2021 WL 4352328, at *4 (M.D. La. Sept. 24, 2021). Having reviewed Plaintiff's pleadings, and the arguments of the parties, the Court now similarly concludes that Plaintiff has failed to state a claim under 42 U.S.C. § 1983 because Plaintiff cannot establish violation of the Due Process Clause of the Fourteenth Amendment.[13]

### a.    Procedural Due Process

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "In order to establish a procedural due process claim, a plaintiff must show that (1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest." *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006).

In the context of raising a procedural due process claim, Plaintiff alleges that her children have the "constitutionally protected interests in the benefits that come from the not being subject to

---

[13] The Due Process Clause of the Fifth Amendment is inapplicable in this action, as it applies to the federal government. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'").

the Board's mask mandate, including the ability to pursue an education without being subjected to health risks that are not offset by any scientifically provable benefits." (R. Doc. 5 at 44). Plaintiff alleges that her children were not provided "notice or meaningful opportunity to be heard as the Superintendent instated the mask mandate prior to offering an opportunity for public discussion." (R. Doc. 5 at 44). Defendants do not raise any specific arguments addressing Plaintiff's allegations that her children were not provided due process required by law prior to the issuance of the mask mandate. The Court notes, however, that "[p]rotection of the health and safety of the public is a paramount governmental interest which justifies summary administrative action." *Hodel v. Virginia Surface Min. & Reclamation Ass'n, Inc.*, 452 U.S. 264, 300 (1981).

The Court need not decide whether Defendants provided adequate opportunity to be heard prior to issuance of the mask mandate because the mask mandate does not violate the minor children's "property right" in a public education. The U.S. Supreme Court has recognized that students have a procedural due process "property right" to a public education. *Goss v. Lopez*, 419 U.S. 565, 579 (1975). Plaintiff does not allege, however, that her minor children were actually denied the right to attend school and receive a public education. Indeed, Plaintiff alleges that her children have been denied a right to public education absent certain health precautions – like a mask mandate – instituted during a global pandemic. No such property right is recognized. *See B.P. by & through L.P. v. N. Allegheny Sch. Dist.*, No. 21-1112, 2022 WL 114075, at *5 (W.D. Pa. Jan. 12, 2022) (plaintiff failed to show a constitutionally protected property interest "for a public education in a safe and healthy environment" with respect to a procedural due process claim challenging the lifting of a mask mandate); *Gunter v. N. Wasco Cty. Sch. Dist. Bd. of Educ.*, No. 21-1661, 2021 WL 6063672, at *11 (D. Or. Dec. 22, 2021) ("Plaintiffs fail to show that they have a constitutionally-protected interest in being allowed to refuse to let their children wear masks while at school."); *P.M. v. Mayfield City School District Board of Education*, No. 21-1711, 2021 WL 4148719, at *3 (N.D.

23

Ohio Sept. 13, 2021) ("[T]he Court neither sees where Plaintiff has been denied a life, liberty, property, or fundamental right; nor how wearing a mask impedes her children's property interest in school attendance.").

In short, Plaintiff's procedural due process claim fails because Plaintiff's minor children's property rights in attending public school have not been violated based on the allegations in the pleadings.

### b.    Substantive Due Process

Plaintiff's claims with respect to substantive due process are grounded on the minor children's alleged "fundamental right to a public education and to an education in a safe and healthy environment." (R. Doc. 5 at 45).

Substantive due process under the Due Process Clause "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). Where a fundamental right is implicated, the Court will apply "strict scrutiny," meaning that the law will not be upheld unless the government demonstrates that the law is necessary to further a compelling governmental interest and has been narrowly tailored to achieve that interest. *Reno v. Flores*, 507 U.S. 292, 302, 113 (1993). If a right is not fundamental, however, then the Court will apply a "rational basis" review, which will deem the law constitutional unless the plaintiff can demonstrate that it is not reasonably related to a rational government interest. *See Harris v. Hahn*, 827 F.3d 359, 365 (5th Cir. 2016) (citation omitted).

The U.S. Supreme Court has held that the right to public education is not a "fundamental right" for the purposes of substantive due process. *See San Antonio Independent Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35 (1973) (noting that education is not a fundamental right within the Constitution); *see also Kadrmas v. Dickinson Pub. Sch.*, 487 U.S. 450, 458 (1988) ("Nor have we accepted the proposition that education is a 'fundamental right,' . . . which should trigger strict

scrutiny when government interferes with an individual's access to it."). Furthermore, several

Courts have held, in response to public health measures raised in response to the instant global

pandemic, that there is no fundamental constitutional right to not wear a mask. *Klaassen v. Trustees*

*of Indiana Univ.*, 2021 WL 3073926, at *38 (N.D. Ind. July 18, 2021), *vacated and remanded with*

*instructions to dismiss as moot*, *Klaassen v. Trustees of Indiana Univ.*, No. 21-2326, 2022 WL

213329 (7th Cir. Jan. 25, 2022); *Whitfield v. Cuyahoga Cnty. Pub. Library Found.*, No. 21-31, 2021

WL 1964360, at *2 (N.D. Ohio May 17, 2021) ("[T]here is no general constitutional right to wear,

or to refuse to wear a face mask in public places."); *United States v. Berglund*, No. 21-cr-31, 2021

WL 1589548 (D. Minn. Apr. 23, 2021) ("Courts have repeatedly found that requiring participants at

trial to wear face masks due to the COVID-19 pandemic does not violate a criminal defendant's

constitutional rights."); *see also Cangelosi v. Sheng*, No. 20-1989, 2020 WL 5960682, at *2-3 (E.D.

La. Oct. 8, 2020) (plaintiff failed to show how mask order violates any right to privacy or freedom

of expression).

 "Because students do not possess a fundamental right to attend school without wearing a

mask or other face covering, the Plaintiffs' substantive due process claim is governed by the

rational basis test." *Oberheim v. Bason*, No. 21-01566, 2021 WL 4478333, at *8 (M.D. Pa. Sept. 30,

2021); *see Stepien v. Murphy*, No. 21-13271, 2021 WL 5822987, at *5 (D.N.J. Dec. 7, 2021)

("Because the mask mandate does not target a suspect class or burden a fundamental right, it

receives not strict scrutiny but rational-basis review."); *W.S. by Sonderman v. Ragsdale*, 2021 WL

2024687, at *2 (N.D. Ga. May 12, 2021) ("Rational basis is the proper standard of review for the

mask mandate. The mandate neither discriminates against a protected class nor infringes a

fundamental right.").

 Under rational basis review, the mask mandate is "accorded a strong presumption of

validity." *Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993). The mask mandate is constitutional if it

(1) promotes a "legitimate governmental purpose" and (2) there is a "rational relationship between" that purpose and the means chosen by the government. *Id.* at 320. The second prong does not require the chosen means to promote the government's purpose "with mathematical nicety." *Id.* (internal quotation marks omitted). "Where there are plausible reasons for [the government's] action, [the] inquiry is at an end." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313-14 (1993). "It is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the [government]." *Beach Commc'ns*, 508 U.S. at 315.

Here, the mask mandate satisfies both prongs of the rational basis test. The government has a compelling interest to protect the public from the spread of COVID-19 during the ongoing pandemic. *Denver Bible Church*, 494 F. Supp. 3d at 828. The mask mandate is a rational measure designed to accomplish that goal in the context of public schools. *See Oakes v. Collier Cty.*, No. 20-568, 2021 WL 268387, at *3 (M.D. Fla. Jan. 27, 2021) ("It would be difficult to contend with a straight face that a mask requirement does not bear a rational relation to protecting people's health and preventing the spread of COVID-19."); *see also Denis v. Ige*, 538 F. Supp. 3d 1063, 1076-78 (D. Haw. 2021) (mask mandate survives rational basis scrutiny). The district judge has already found that wearing a mask in public places serves the "state's interest in preventing the spread of COVID-19 and protecting individuals' health is substantial." *Miranda*, 2021 WL 4352328, at *6 (citing *Roman Catholic Diocese* 141 S. Ct. 63, 67 ("Stemming the spread of COVID-19 is unquestionably a compelling interest.")). "Indeed, at this point in the pandemic, a nearly unanimous consensus of the public health community recommends the use of masks as a means of reducing the spread of the virus and protecting the mask wearer from it." *Miranda*, 2021 WL 4352328, at *6 (citation omitted).

Plaintiff's substantive due process claim fails because Plaintiff's minor children do not have a fundamental right to not wear a mask in public schools and the mask mandate survives rational basis review.

### iii.    ADA Claims

Counts V and VI purport to raise claims under the Americans with Disabilities Act of 2008 ("ADA"). (R. Doc. 5 at 48). Plaintiff merely quotes language from ADA regulations prohibiting discrimination, or denial of participation, on the basis of disability at a place of public accommodation. *See* 28 CFR § 36.201(a), 28 CFR § 36.202(a). Count XVII more broadly alleges a "Violation of Americans with Disability Act of 2008" and quotes 42 U.S.C. § 12203.

It appears that Plaintiff is alleging a claim under Title III of the ADA, which provides, in pertinent part, that: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns . . . or operates a place of public accommodation." 42 U.S.C. § 12182(a). "To state a claim under Title III of the ADA a plaintiff must show: (1) that he is disabled as defined by the ADA, 42 U.S.C. § 12102(2); (2) that the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) that the defendant discriminated against the plaintiff because of the plaintiff's disability." *Mosley v. Midas Worthington, LLC*, No. 19-75, 2020 WL 113350, at *8 (M.D. La. Jan. 9, 2020) (citing 42 U.S.C. § 12182(a); *Smith v. Bastrop Med. Clinic, P.A., Inc.*, No. 11-330, 2011 WL 3844223, at *4 (W.D. Tex. Aug. 29, 2011), *subsequently aff'd sub nom. Smith v. Bastrop Med. Clinic, P.A.*, 465 F. App'x 389 (5th Cir. 2012)).

Given that the School Board is a public entity, Plaintiff cannot state a claim for relief under Title III of the ADA. The Court will, therefore, assume that Plaintiff is attempting to raise a claim under Title II of the ADA, which pertains to public entities. "A plaintiff states a claim for relief

under Title II if he alleges: (1) that he has a qualifying disability; (2) that he is being denied the

benefits of services, programs, or activities for which the public entity is responsible, or is otherwise

discriminated against by the public entity; and (3) that such discrimination is by reason of his

disability." *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011); *see* 42 U.S.C. § 12132.

Plaintiff fails to state a claim under Title II of the ADA. The pleadings fail to allege specific

facts in support of a finding that Plaintiff's minor children have a disability as defined by the ADA

or that Defendants discriminated against Plaintiff or her children in light of those disabilities.

Plaintiff describes her children as "healthy" and does not indicate anywhere in the pleadings that

they suffer from any medical conditions recognized as disabilities under the ADA. (*See* R. Doc. 5 at

22). The pleadings do not allege that G.C. and C.C. suffer from an ADA-recognized disabilities,

that they sought any accommodations for such disabilities, that they were denied any sought

accommodations, or that they were retaliated against for seeking accommodations.

Plaintiff has failed to state a claim under the ADA.[14]

### iv.    The EUA Statute

Count IX[15] of the Complaint asserts the following claim: "Violation of Federal law stating

an individual has the 'right to refuse' any experimental medical intervention under an Emergency

Use Authorization" (R. Doc. 5 at 49). Plaintiff does not allege any operative facts with respect to

this allegation. The only further allegation Plaintiff makes is the following: "Authorization for

---

[14] Because Plaintiff does not alleged any disabilities, the Court need not whether Plaintiff was required to allege
exhaustion of administrative remedies. To be clear, however, " [w]here a plaintiff raises claims under the ADA or
Rehabilitation Act in the context of seeking redress for a school's failure to provide a [free appropriate public
education]," the exhaustion requirement of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §
1415(*l*), is implicated even if the complaint is "not phrased or framed in precisely that way." *E.T. v. Paxton*, 19 F.4th
760, 767 (5th Cir. 2021) (quoting *Fry v. Napoleon Cmty. Schs.*, --- U.S. ---, 137 S. Ct. 743, 755, (2017)); *see also Hayes
v. DeSantis*, No. 21-22863, 2021 WL 4236698, at *6 (S.D. Fla. Sept. 15, 2021) ("Where claims arising under the ADA
and Rehabilitation Act are asserted in the context of public education, the question of whether administrative exhaustion
requirement under the IDEA is implicated.")  (citing 20 U.S.C. § 1401(3)(A)(i)).
[15] Plaintiff labels this as Count VIIII.

Medical Products for Use in Emergencies USC § 360bbb-3.e.1.A Masks and face coverings are recommended through an Emergency Use Authorization according to the FDA." (R. Doc. 5 at 49).

It appears that Plaintiff is seeking to allege a private cause of action pursuant to the federal Emergency Use Authorization ("EUA") statute, 21 U.S.C. 360bbb-3. "Section 360bbb-3 establishes the statutory framework for emergency authorization of products (including drugs, devices, and biological products) by the Secretary of Health and Human Services." *Dustin Llloyd v. School Board of Palm Beach County*, No. 21-81715, 2021 WL 5353879, at *4 (S.D. Fla. Oct. 29, 2021). In pertinent part, the statute provides that "[w]ith respect to the emergency use of an unapproved product, the Secretary, to the extent practicable . . . shall . . . establish . . . [a]ppropriate conditions designed to ensure that individuals to whom the product is administered are informed . . . of the option to accept or refuse administration of the product, of the consequences, if any, of refusing administration of the product, and of the alternatives to the product that are available and of their benefits and risks." 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(III).

Plaintiff does not allege that her minor children were required to wear a mask that fell under an EUA issued by the Secretary of Health and Human Services. At any rate, Plaintiff has no private right of action for a claim under Title 21. *See* 21 U.S.C. § 337(a) (with certain exceptions applicable to the states, "all . . . proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States."); *Navy Seal 1 v. Biden*, No. 21-2429, 2021 WL 5448970, at *3 (M.D. Fla. Nov. 22, 2021) (the statutory "option to accept or refuse" an emergency vaccine found in 21 U.S.C. § 360bbb-3(e)(1)(A) confers no private right of action).

Plaintiff has failed to state a claim under the EUA statute.

### v.    42 U.S.C. § 1985

Count XVI alleges a claim under 42 U.S.C. § 1985(3), which prohibits conspiracies to deprive a person of equal protection of the laws or of equal privileges and immunities under the

laws on the basis of race." *See Jackson v. Biedenharn,* 429 F. App'x 369, 372 (5th Cir. 2011) (citing

42 U.S.C. § 1985(3)). "To state a claim under § 1985(3), a plaintiff must allege facts demonstrating

(1) a conspiracy; (2) for the purpose of depriving a person of the equal protection of the laws; and

(3) an act in furtherance of the conspiracy; (4) which causes injury to a person or a deprivation of

any right or privilege of a citizen of the United States." *Lockett v. New Orleans City,* 607 F.3d 992,

1002 (5th Cir.2010) (citing *Hilliard v. Ferguson,* 30 F.3d 649, 652-53 (5th Cir. 1994)).

"Additionally, the conspiracy must also have a racially based animus." *Id.* (citing *Hillard*, 30 F.3d

at 653). Here, Plaintiff has not alleged sufficient facts to support any alleged "conspiracy," much

less that the alleged "conspiracy" had a racially-based animus.

Plaintiff has failed to state a claim under 42 U.S.C. § 1985.

### vi.    OSHA Respiratory Protection Standards

Count XVIII appears to allege that the mask mandate does not comply with the

Occupational Safety and Health Administration ("OSHA") Respiratory Protection Standards. (R.

Doc. 5 at 42-53). Plaintiff merely quotes the federal regulatory standards governing safe respirator

usage in the workplace found in 29 C.F.R. 1910.134.

Plaintiff and her children are not employees of the School Board and have not raised any

allegations with respect to respirators as defined by the regulations.

Plaintiff has failed to state a claim under 29 C.F.R. 1910.134.

### vii.    The Remaining State Law Claims

The Court may decline to exercise supplemental jurisdiction over Plaintiff's remaining state

law claims (Counts III, IV, VII, VIII, X, XI, XII, XIII, XIV, and XV). Where the Court has original

jurisdiction, it may generally exercise "supplemental jurisdiction over all other claims in the action

within such original jurisdiction that they form part of the same cause or controversy under Article

III of the United States Constitution." 28 U.S.C. § 1367(a). The Court may decline to exercise

supplemental jurisdiction, however, under Section 1367(c), which provides:

> The district courts may decline to exercise supplemental jurisdiction over a claim
> under subsection (a) if--(1) the claim raises a novel or complex issue of State law, (2)
> the claim substantially predominates over the claim or claims over which the district
> court has original jurisdiction, (3) the district court has dismissed all claims over
> which it has original jurisdiction, or (4) in exceptional circumstances, there are other
> compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Given that all of Plaintiff's federal claims are subject to dismissal, the Court

can properly exercise its discretion in declining supplemental jurisdiction over all remaining state

law claims. *See Raskin*, 2021 WL 5396001, at *4 (declining exercise of supplemental jurisdiction

where the state claims involved "novel issues of state law and policy related to COVID-19").

### D.    Improper Service

Defendants also seek dismissal under Rule 12(b)(5) and Rule 4(m) for improper service. (R.

Doc. 20-4 at 22-24). Plaintiff asserts that all defendants were properly served. (R. Doc. 26 at 5-6).

"A motion to dismiss pursuant to Rule 12(b)(5) turns on the legal sufficiency of the service

of process." *Holly v. Metro. Transit Auth.*, 213 Fed. App'x 343, 344 (5th Cir. 2007). The burden of

demonstrating the validity of service when an objection is made lies with the party making service.

*Id.* (citing *Carmimi v. Royal Caribbean Cruise Line, Inc.*, 959 F. 2d 1344, 1346 (5th Cir. 1992)).

Even if Plaintiff did not properly serve all defendants, it would be proper for the Court to

provide Plaintiff with additional time to serve the defendants under Rule 4(m). The Court need not

address this issue, however, given that Plaintiff's federal claims are subject to dismissal, with

prejudice, on the merits and Plaintiff's state law claims are subject to dismiss, without prejudice, for

lack of supplemental jurisdiction.

### E.    Defendants' Motion to Strike Affidavit

Defendant seeks dismissal of the Affidavit of Stephen E. Petty, on the basis that it is not a

"proper" exhibit to support the allegations in the Complaint and is otherwise "vague, conclusory,

not based upon personal knowledge, and incomplete. (R. Doc. 20-4 at 21-22).

The Court has found it proper to dismiss all of Plaintiff's claims without addressing the assertions made by Mr. Petty in his Affidavit. Accordingly, this relief is properly denied as moot.

**F.     Attorney's Fees**

While Plaintiff has raised a claim for attorney's fees, she does not state the source of law from which such fees are awardable. Having considered the pleadings as a whole, the Court will presume that Plaintiff is seeking an award of attorney's fees under 42 U.S.C. § 1988 as the prevailing party on Plaintiff's Section 1983 claims.[16]

Defendants assert that they should be awarded reasonable attorney's fees as costs because they are the "prevailing party" with respect to Plaintiff's Section 1983 action. Section 1988 provides that in "any action or proceeding to enforce a provision" of Section 1983 "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b).

Under this statute, "[t]he district court should award the prevailing defendant attorney's fees only if the Plaintiffs' action was 'frivolous, unreasonable, or without foundation.' " *Walker v. City of Bogalusa*, 168 F.3d 237, 240 (5th Cir. 1999) (quoting *White v. South Park Indep. School Dist.*, 693 F.2d 1163, 1169-70 (1982)). "A suit is frivolous if it is 'so lacking in arguable merit as to be groundless or without foundation . . . .' " *Walker*, 168 F.3d at 240 (quoting *Plemer v. Parsons–Gilbane*, 713 F.2d 1127, 1140-41 (5th Cir. 1983). "In determining whether a suit is frivolous, the district court should look to factors such as whether the Plaintiffs established a prima facie case, whether the defendant offered to settle, and whether the court dismissed the case or held a full trial." *Walker*, 168 F.3d at 240 (citing *United States v. Mississippi*, 921 F.2d 604, 609 (5th Cir.

---

[16] Louisiana law provides that attorney's fees are not awardable unless expressly stated in a written contract or statute, which are not pled. *Sher v. Lafayette Ins. Co.*, 988 So.2d 186 (La. 2018).

1991)). Additionally, "[a] plaintiff's claim may be frivolous, unreasonable, or groundless if the claim is barred by state sovereign immunity, or is moot[.]" *CRST Van Expedited, Inc. v. E.E.O.C.*, 194 L.Ed. 2d 707 (2016) (citations omitted).

It is unclear whether a defendant in a Section 1983 action is a "prevailing party" where the action is dismissed on the basis of mootness. *CF Associated Builders & Contractors of Louisiana, Inc. v. Orleans Par. Sch. Bd.*, 919 F.2d 374, 377 (5th Cir. 1990) ("Federal courts have firmly established, however, that a civil rights *plaintiff* may 'prevail'" in a case that is settled or otherwise becomes moot before the court renders a judgment on the merits.") (emphasis added). It is clear, however, that Plaintiff is not a prevailing party because there is no evidence that the filing of this lawsuit caused Defendants to "remedy" the alleged constitutional violations by modifying the mask mandate. *See Savidge v. Fincannon*, 836 F.2d 898, 904-05 (5th Cir. 1988) (to qualify as a "prevailing party" in a moot lawsuit, the plaintiff must demonstrate that they (1) have received "a substantial part of the injunctive relief they sought from the defendants" and (2) that this relief was a causally related to the litigation).

Even assuming the Defendants can be considered the "prevailing party" in this action, the Court finds no basis for an award of attorney's fees under 42 U.S.C. § 1988(b). While a great deal of Plaintiff's allegations are patently frivolous – the Section 1983 allegations raised in this action are alleged due process violations in light of an allegedly unconstitutional mandate that students where masks in public schools in Ascension Parish. While their mother may not have had capacity to sue on their behalf *pro se*, the minors subject to the mask mandate have asserted violations of their Constitutional rights to due process. These claims are not patently frivolous. Under these circumstances, and in an exercise of its discretion, the Court finds an award of attorney's fees to the Defendants, even if they can be deemed the "prevailing party" in this action, to be improper.

**III.    Conclusion**

Based on the foregoing,

**IT IS RECOMMENDED** that Plaintiff's Motion to Change Status from Pro Se to Sui Juris and Affidavit (R. Doc. 27) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Plaintiff's Motion to Dismiss (R. Doc. 26) be **DENIED.**

**IT IS FURTHER RECOMMENDED** that Defendants' Motion to Dismiss, Motion to Strike, and Motion for Attorney's Fees (R. Doc. 20) be **GRANTED IN PART and DENIED IN PART**, and that Plaintiff's federal claims be **DISMISSED WITH PREJUDICE** and Plaintiff's state claims be **DISMISED WITHOUT PREDJUDICE**.

Signed in Baton Rouge, Louisiana, on February 24, 2022.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**